IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | |
|---|---|
| CHICAGO INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 3:09-0659 |
| HEALTH CARE INDEMNITY, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

NOW COMES the Plaintiff, CHICAGO INSURANCE COMPANY (hereinafter "CIC"), by and through its attorneys, and for its Complaint for Declaratory Judgment and Other Relief, brought pursuant to Rule 57 of the West Virginia Rules of Civil Procedure and W. Va. Code § 55-13-1 *et seq*, against Defendant, HEALTH CARE INDEMNITY, INC. (hereinafter "HCI"), states as follows:

## PARTIES and VENUE

1.     CIC is an insurance company organized and existing under the laws of the state of Illinois with its principal place of business in the state of Illinois.  CIC is licensed to do business in the State of West Virginia and conducts business in the State of West Virginia.

2.     Upon information and belief, Defendant, HCI is an insurance company organized and existing under the laws of the state of Colorado with its principal place of business in the state of Tennessee.  At all times relevant hereto, HCI conducted business in the State of West Virginia.

3.      Jurisdiction is proper before this Court pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00 and the Plaintiff and the Defendant are citizens of different states.

4.      Venue is proper before this Court as the actions giving rise to the controversy between the parties occurred, in part, in Putnam County, West Virginia.

## NATURE OF THE ACTION

5.      Pursuant to W. Va. Code § 55-13-1 *et seq.* and Rule 57 of the West Virginia Rules of Civil Procedure, CIC seeks a declaratory judgment regarding the respective rights and obligations of CIC and HCI pursuant to insurance policies under which David L. McNair (hereinafter "McNair") was an insured.  Specifically, CIC seeks a declaration that HCI is required to reimburse CIC for HCI's share of sums that CIC paid to defend and indemnify McNair for certain underlying suits arising out of McNair's employment with Dr. John A. King, D.O. (hereinafter "Dr. King") and Teays Valley Health Services, Inc. d/b/a Putnam General Hospital (hereinafter "Putnam General Hospital").

6.      This matter is appropriate for declaratory judgment in that a justiciable controversy exists between the parties, as HCI has failed to fulfill its contractual obligations under its insurance policies providing coverage to McNair.

## FACTUAL BACKGROUND

7.      During 2004 and 2005, approximately 106 lawsuits were filed in  Circuit Court of Putnam County, West Virginia, against, inter alia, McNair, Dr. King, and Putnam General Hospital (hereinafter the "Putnam County Dr. King Cases" or "Underlying Suits").   The Underlying Suits arose out of certain surgeries performed by Dr. King, assisted by McNair, at Putnam General Hospital at various time between 2002 and 2003.

8.      At the time the surgeries complained of in the Underlying Suits were performed, McNair was employed by Putnam General Hospital and Dr. King in Putnam County, West Virginia as a physician's assistant and/or surgical assistant.

9.      The complaints filed in the Putnam County Dr. King Cases generally asserted one or more of the following causes of actions against the underlying defendants, including McNair: medical malpractice; trespass; assault and battery; intentional and negligent infliction of emotional distress; outrage; fraud and deceit; civil conspiracy; and joint venture/joint enterprise.

10.     HCI issued policy Nos. HCI-10102 and HCI-10103 to HCA, Inc. and  subsidiary organizations, effective January 1, 2002 through January 1, 2003 and January 1, 2003 to January 1, 2004, respectively( hereinafter the "HCI Policies").

11.     At the times that the surgeries complained of in the Underlying Suits were performed, Putnam General Hospital was a subsidiary organization of HCA and/or otherwise qualified as an insured under the HCI Policies.

12.     Both HCI Policies provided limits of liability in the amount of $10,000,000 each and every occurrence and unlimited aggregate limits.

13.     As an employee of Putnam General Hospital, McNair was insured under both HCI Policies.

14.     McNair was also an insured under CIC policy number 44-2010129, issued to a purchasing group, Allied Health Profession, for two consecutive annual policy periods from April 5, 2002 to April 5, 2003 and April 5, 2003 to April 5, 2004 (the "CIC Policies").  The CIC Policies provided limits of liability in the amount of $1 million each incident and $3 million in the aggregate for each policy year.

15.     The CIC Policies contain an "other insurance" clause that provides in relevant part:

3

> If there is other valid insurance (whether primary, excess, contingent or self-insurance) which may apply against a loss or claim covered by this policy, the insurance provided hereunder shall be deemed excess insurance over and above the applicable limit of all other insurance or self-insurance…

* * *

> …When both this insurance and other insurance or self-insurance apply to the loss on the same basis, whether primary, excess or contingent…each will contribute pro rata.

* * *

16.     Initially, McNair tendered the Underlying Suits for defense and indemnity to HCI under the HCI Policies.

17.     HCI retained defense counsel to defend McNair and exercised control over McNair's defense.

18.     Later, McNair also tendered the Underlying Suits for defense and indemnity to CIC under the CIC Policies.

19.     CIC initially agreed to contribute toward McNair's defense of the Underlying Suits and began to reimburse 50% of McNair's defense costs.

20.     On or about April 2, 2007, the underlying plaintiffs made a written settlement demand in the amount of $5.5 million for a release of all of plaintiffs' claims against McNair in the Underlying Suits.

21.     On or about May 17, 2007, CIC advised HCI's coverage counsel that pursuant to the other insurance clause in the CIC policy, CIC was only potentially obligated to contribute on a pro rata basis or reimburse, at most, 1/11th of McNair's defense costs.

22.     HCI never responded, objected, disputed or disagreed with the fact that HCI was responsible for at least 10/11th of McNair's defense costs.

23.     Instead, HCI proposed that HCI and CIC enter into a risk transfer agreement, whereby HCI would assume all of CIC's alleged coverage obligations to McNair in exchange for

CIC's payment of a certain sum of money to HCI. Upon information and belief, HCI offered to assume all responsibility for any defense and indemnity obligations to McNair under the CIC Policies in order to completely control McNair's defense, including all settlement-related decisions.

24. HCI was a captive insurance company that, upon information and belief, was related to and/or controlled by Putnam General Hospital's corporate parent, HCA.

25. The Underlying Suits sought hundreds of millions of dollars in damages from the defendants, including McNair. CIC, concerned that HCI would not be financially able to pay the potential judgment amounts sought by the underlying plaintiffs, insisted that HCI obtain some type of bond to guarantee full indemnity to their mutual insured, McNair, in the risk transfer agreement. HCI refused and, shortly thereafter, ceased all communications with CIC and McNair's coverage counsel concerning HCI's proposed agreement to take over CIC's alleged coverage obligations to McNair.

26. Throughout the spring, summer and fall of 2007, McNair's defense counsel urged CIC to settle the Underlying Suits on behalf of McNair because a finding of liability against McNair was probable and any resulting damages awarded against McNair were likely to greatly exceed the limits of the CIC Policies.

27. After HCI ceased all communications with CIC and McNair's coverage counsel concerning HCI's proposed risk transfer agreement, CIC, at the urging of McNair's defense counsel and to fully protect McNair from excess and/or uninsured judgments, directed McNair's defense counsel to make an offer to settle any and all claims against McNair.

28. On or about January 22, 2008, the underlying plaintiffs conveyed a global settlement demand to McNair's defense counsel demanding payment of $4.75 million in exchange for a release of all plaintiffs' claims against McNair.

29.     On or about January 30, 2008, CIC demanded that HCI reimburse CIC $432,857.47 in defense costs that CIC had paid beyond CIC's *pro rata* share.  CIC advised HCI that CIC's records reflected that through December 26, 2007, CIC had paid $529,047.89 in attorneys' fees and costs in connection with McNair's defense of the Underlying Suits.  This was ½ of the $1,058,095.70 of the approved attorneys' fees and costs submitted for payment to CIC and HCI prior to December 26, 2007.  CIC's 1/11th pro rata share of this amount was $96,190.42.  Consequently, CIC had overpaid its share of McNair's defense costs by at least $432,857.47 and HCI had underpaid its pro rata share by the same amount.  Therefore, CIC demanded that HCI immediately reimburse CIC the amount of $432,857.47.  HCI never responded to CIC January 30, 2008 demand for reimbursement of McNair's defense costs.

30.     On or about February 14, 2008, CIC wrote to McNair's underlying defense counsel and coverage counsel and advised them that CIC was willing to contribute to a settlement but that HCI had an obligation to contribute its proportionate share.  Therefore, CIC requested McNair's counsel to, if counsel had not already done so, notify HCI of the plaintiffs' $4.75 million settlement demand and obtain specific settlement authority from HCI to respond to the demand.

31.     Upon information and belief, HCI never gave McNair's defense counsel or coverage counsel any settlement authority to respond to the underlying plaintiffs' demand.  Additionally, HCI never contacted CIC to coordinate a response to the plaintiffs' demand.

32.     Upon information and belief, HCI did not contribute any money toward the settlement of the underlying plaintiffs' claims against McNair.

33.     CIC ultimately settled all the underlying plaintiffs' claims against McNair and obtained a full and complete release on McNair's behalf.

## COUNT I
## (DECLARATORY JUDGMENT)

34.     The allegations of paragraphs 1 through 33 are incorporated by reference.

35.     HCI was obligated to defend and indemnify McNair in the Underlying Suits.

36.     HCI wrongfully refused and/or failed to pay its *pro rata* share of McNair's defense and indemnity in the Underlying Suits.  More specifically, HCI was obligated to pay at least 10/11ths of McNair's defense costs and at least 10/11ths of the amount that CIC paid on McNair's behalf to settle the Underlying Suits.

37.     There is an actual and justiciable controversy between CIC and HCI regarding HCI's coverage obligations to McNair for the Dr. King cases.

38.     CIC, on its own behalf and as subrogee of McNair, is therefore entitled to a declaration that HCI is obligated to reimburse CIC for HCI's pro rata share of defense and indemnity incurred on McNair's behalf in the Underlying Suits.

## COUNT II
## (BREACH OF CONTRACT)

39.     The allegations of paragraphs 1 through 38 are incorporated by reference.

40.     Under the terms and conditions of the HCI Policies, HCI was obligated to defend and indemnify McNair in the Underlying Suits.

41.     Due to HCI's withdrawal of all potential defenses to coverage for McNair under the HCI Policies, including the limits of liability, HCI had an unlimited obligation to defend and indemnify McNair in the Underlying Suits.

42.     HCI failed to pay its proportionate share of McNair's defense and indemnity in the Underlying Suits.

43.     CIC, as assignee of McNair, is therefore entitled to damages for HCI's breach of contract, in an amount in excess of CIC's pro rata share of defense and indemnity incurred on behalf of McNair in the Underlying Suits.

## COUNT III
## (UNJUST ENRICHMENT)

44.     The allegations of paragraphs 1 through 43 are incorporated by reference.

45.     As a result of CIC's payment of more than CIC's pro rata share of McNair's defense and indemnity in the Underlying Suits, HCI has been unjustly enriched.

46.     HCI is, therefore, required to reimburse CIC for HCI's pro rata share of McNair's defense and indemnity in the Underlying Suits.

## COUNT IV
## (CONTRIBUTION)

47.     The allegations of paragraphs 1 through 46 are incorporated by reference.

48.     HCI was required to pay at least a 10/11th share of McNair's defense and indemnity in the Underlying Suits.

49.     In order to fully protect McNair's interests in the Underlying Suits, CIC paid more than its pro rata share of McNair's defense and indemnity in the Underlying Suits.

50.     CIC is therefore entitled to contribution from HCI for all amounts CIC paid in excess of CIC's pro rata share of McNair's defense and indemnity in the Underlying Suits.

## PRAYER FOR RELIEF

WHEREFORE, CIC prays that this Court enter an order as follows:

A.     Declaring that HCI was obligated to pay at least a 10/11th share of McNair's defense and indemnity in the Underlying Suits and that CIC was only obligated to pay at most a 1/11th share of McNair's defense and indemnity;

B.     Entering judgment against HCI and in favor of CIC for the sums in excess of CIC's pro rata share of defense and indemnity that CIC paid on McNair's behalf in connection with the Underlying Suits.

C.     Finding that HCI breached its duty to fully defend and indemnify McNair in the Underlying Suits;

8

D.      Awarding CIC damages against HCI for HCI's breach of contract;

E.      Awarding CIC contribution from HCI for the sums in excess of CIC's pro rata share of defense and indemnity that CIC paid on McNair's behalf in connection with the Underlying suits; and

F.      Awarding CIC's costs and fees; and any and all such further relief as the Court deems just and appropriate.

Respectfully submitted this the 11th day of June, 2009.


                                        **Plaintiff,**
                                        **CHICAGO INSURANCE COMPANY,**
                                        **By Counsel,**


                                        */s/ Debra Tedeschi Herron*
                                        James A. Varner, Sr.          (WV State Bar #3853)
                                        Debra Tedeschi Herron     (WV State Bar #6501)

                                        Empire Building - 400 West Main Street
                                        P. O. Drawer 2040
                                        Clarksburg, WV 26302-2040
                                        Telephone: (304) 626-1100
                                        Facsimile: (304) 623-3035

McNeer, Highland, McMunn and Varner, L.C.
             Of Counsel