**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON**

**CHICAGO INSURANCE COMPANY,**

        **Plaintiff,**

**v.**                                  **Case No. 3:09-cv-00659**

**HEALTH CARE INDEMNITY, INC.,**

        **Defendant.**

## CORRECTED MEMORANDUM OPINION AND ORDER

This action arises out of the numerous Dr. John King medical malpractice cases filed in the Circuit Court of Putnam County, West Virginia. Dr. King's surgical assistant, David McNair, was named as a defendant in many of the suits. Mr. McNair had an insurance policy with Chicago Insurance Company ("CIC").

Thomas J. Hurney, Jr., Esq. of the law firm of Jackson Kelly PLLC represented Mr. McNair in the Putnam County litigation. Mr. Hurney was retained by Health Care Indemnity, Inc. ("HCII"); by agreement between HCII and CIC, his bills were split 50/50.

In February, 2008, HCII settled the Putnam County litigation on behalf of King, McNair, the hospital and others, with respect to 70 plaintiffs represented by John Curry, Esq. for a total of $55 million. Mr. Hurney was informed of the settlement and the inclusion of McNair. Subsequently, CIC settled claims against McNair with respect to the same 70 plaintiffs plus other

plaintiffs.  CIC filed this action against HCII for contribution of most of the settlement amount paid by CIC, plus other expenses. HCII has counterclaimed for contribution by CIC of HCII's expenses up to CIC's policy limits.

HCII served a deposition subpoena and a subpoena *duces tecum* on Mr. Hurney, a nonparty.  The subpoena *duces tecum* requests production of various categories of documents relating to the following issues and topics:

> (a) settlement efforts in the King/McNair litigation;
> (b) valuations of exposure of McNair and/or other defendants;
> (c) analysis or assessments of the liabilities of McNair and/or other defendants;
> (d) recommendations concerning strategy in the defense of McNair and/or other defendants;
> (e) payment of your invoices by McNair, HCI, and/or Chicago Insurance Company ("CIC"); or
> (f) insurance coverage matters.

(Docket # 45-1, at 2.)  By Order entered June 8, 2010 (# 53), the subpoenas were stayed pending briefing and ruling by the Court.

Pending before the Court are Mr. Hurney's objection to the subpoena *duces tecum* (# 45), Mr. Hurney's motion to quash and objection to the deposition subpoena (# 46), and CIC's motions to quash the deposition subpoena (# 49) and the subpoena *duces tecum* (# 50).  HCII filed a joint response with exhibits, cross-motion to compel Mr. Hurney's deposition and production of documents, and cross-motion for expenses, including attorney's fees (# 54), a brief (# 55), and a motion to seal (# 56) with copies of numerous documents received by HCII from Mr. Hurney during the King/McNair

2

litigation.  By Order entered July 12, 2010 (# 72), the motion to seal was granted.  Mr. Hurney and CIC filed replies (## 65 and 67) in support of their motions to quash.  HCII filed a reply in support of its cross-motion to compel (# 71).

## Positions of the Parties

Mr. Hurney asserts that the documents and testimony sought by HCII are subject to the attorney-client privilege, which is held by David McNair.  (# 45, at 1-2; # 46, at 1; # 47, at 1-2.)  Mr. Hurney asks to be reimbursed for the cost of any production which may be ordered, noting that the documents are in 77 boxes in off-site storage.  (## 45-47, at 2.)  He claims that the insurance companies did not pay the legal fees in full, and asks the Court to require that the bills be paid prior to production of the documents and testimony.  Id.  In his memorandum, Mr. Hurney contends that the subpoenas impose an undue burden by requiring him to review extensive files for his testimony and response to the subpoena duces tecum.  (# 47, at 3.)  Anticipating HCII's contention that the privilege was waived by HCII's receipt of information from Mr. Hurney during the underlying litigation, Mr. Hurney claims that HCII does not need anything that it cannot get from CIC.  Id.

CIC's motions to quash assert the attorney-client privilege, the quasi attorney-client privilege and the work product doctrine. (# 49, at 1; # 50, at 1.)  It claims that it has standing to move to quash the subpoenas served on Mr. Hurney.  (# 51, at 3-5.)

3

HCII's response (# 54) and brief (# 55) argue that no privilege exists as to HCII; that if a privilege existed, it has been waived; that CIC placed Mr. Hurney's advice "at issue;" that the "joint interest" doctrine applies; that HCII and CIC waived any privilege or protection as to Mr. Hurney's documents and testimony by way of their subrogation rights; that David McNair has a duty to cooperate with HCII; that Mr. Hurney and CIC waived any claimed privilege by failing to comply with Federal and Local Rules of Civil Procedure; that Mr. Hurney should not receive reimbursement other than document copying costs and the standard witness fee; and that HCII should be awarded its expenses, including attorney's fees, pursuant to Rule 37(a)(5).

Mr. Hurney's reply (# 65) complains that it is inequitable to impose the burdens of the subpoenas on him, particularly because he was not paid all his legal fees.

CIC's reply (# 67) argues that HCII has not addressed CIC's claim of quasi attorney-client privilege, that the "at issue" doctrine is not applicable, that the "joint interest" doctrine is not applicable, and that McNair has no obligation to produce documents.

HCII's reply in support of its cross-motion to compel (# 71) contends that neither Mr. Hurney nor CIC has established any right to claim privilege, that they have not established any actual conflict between McNair and HCII, that CIC's waiver arguments fail,

that neither Mr. Hurney nor CIC has rebutted that both HCII and CIC have subrogation rights and that CIC waived McNair's privilege, that the joint interest doctrine applies, and that McNair is not at risk if Mr. Hurney testifies and complies with the subpoena *duces tecum*.

## Analysis

To start at the beginning, by letter dated June 1, 2004, HCII retained Mr. Hurney to represent David McNair.  (# 54-2.)   On February 4, 2005, CIC agreed to defend McNair and to pay half the fees and expenses of his representation by Mr. Hurney.  (# 54-3.)

On November 14, 2005, a Joint Defense Agreement was executed, with Mr. Hurney signing as "counsel for David McNair."  (# 54-10, at 11.)  George A. Shannon, Jr., who is counsel of record for HCII in this action, signed the Joint Defense Agreement as "counsel for HCA, Inc., Healthtrust, Inc. - The Hospital Company, Hospital Corp., LLC, HCA Psychiatric Company, and other affiliates of HCA, Inc. and the representatives of any of these affiliates."  Id. at 10.   Richard D. Jones of Flaherty, Sensabaugh & Bonasso, also counsel of record for HCII in this action, signed the Joint Defense Agreement for the same clients as Mr. Shannon, plus Teays Valley Health Services, Inc. d/b/a Putnam General Hospital and its employees and representatives.  Id. at 9.  No attorney signed for CIC.

By letter dated February 27, 2007, to David McNair, with a

copy to Mr. Hurney (two years after CIC agreed to share McNair's defense costs), CIC advised that CIC was reserving its rights as to its coverage of McNair.  (# 54-4.)  In the letter, CIC refers to HCII's defense of McNair, declares that it is "other insurance," and states that it will "not pay more than it's [sic] <u>pro</u> <u>rata</u> share of [the] defense costs and any judgment or settlement amounts."  (# 54-4, at 13.)  The letter further states:

> Please note, however, that under West Virginia law, your present defense counsel, Mr. Hurney, is ethically bound to solely represent your interests in the underlying cases.  Additionally, CIC has merely been paying a portion of Mr. Hurney's fees.  HCI has been paying the remainder.  Mr. Hurney was not directly retained by CIC, nor has CIC been directing his defense of you in the underlying claims.  If you would like to exercise your right to have Mr. Hurney continue as your defense counsel, please sign and return a copy of the attached waiver to me in the enclosed self-addressed stamped envelope.

<u>Id.</u> at 15.  The attached waiver reads as follows:

WAIVER OF CONFLICT IN INTEREST

> I, David L. McNair, having been fully advised and informed of potential conflicts of interest in having the Chicago Insurance Company participate in my defense of the underlying suits, hereby waive any potential conflict of interest, real or imagined, and elect not to retain independent counsel, and consent to Thomas Hurney's continued representation of me in the underlying actions, including but not limited to suits filed by the individuals set forth below.

<u>Id.</u> at 21.  The Court assumes that Mr. McNair signed the waiver because Mr. Hurney continued representing him.

"When the same attorney simultaneously represents two or more clients on the same matter, the individuals [or corporations] being

6

represented are considered joint clients." Rice, 1 <u>Attorney Client Privilege in the United States</u>, § 4:30, at 4-195 (2d ed. 2010); <u>Simpson v. Motorists Mut. Ins. Co.</u>, 494 F.2d 850, 855 (7th Cir. 1974); Paul R. Rice, 1 <u>Attorney Client Privilege in the United States</u>, § 4:29, at 4-187 (2d ed. 2010); <u>State ex rel. Allstate Ins. Co. v. Gaughan</u>, 508 S.E.2d 75, 88 (W. Va. 1998) ("the attorney hired by the insurer to represent its insured, actually is representing both the insurer and the insured," citing <u>State ex rel. USF&G v. The Montana Second Judicial District Court</u>, 240 Mont. 5, 783 P.2d 911, 913 (Mont. 1989)).  During 2006 and 2007, Mr. Hurney regularly corresponded simultaneously with his contact at HCII (Todd Hagemeyer) and his contact at CIC (Jennifer Green).  As shown by the documents filed under seal (# 73), Mr. Hurney's correspondence to HCII and CIC was replete with attorney-client privileged communications and his work product.  "[C]onsistent with the law when parties who share communications under a joint defense agreement or community of interests arrangement, because each client has equal rights to the protection of the privilege, one of the joint clients cannot waive the privilege for the remainder of the group of clients, and *cannot assert the privilege against the other if they subsequently become adversaries*."  Rice, <u>supra</u>, at 4-199-200 (emphasis added).

The Court finds that HCII and CIC had joint interests with respect to the representation of Mr. McNair by Mr. Hurney based

7

upon several factors, which are addressed in Rice, supra. First, Mr. Hurney conducted himself as representing McNair, HCII and CIC, and the insurance companies recognized that Mr. Hurney was representing McNair for both of them. Second, CIC did not have legal counsel other than Mr. Hurney; HCII had other lawyers representing the hospital, Dr. King, and other individuals, but HCII did not have any lawyer other than Mr. Hurney representing David McNair. Third, Mr. Hurney made the same confidential communications, in the same documents, to HCII and CIC; by addressees or by cc [carbon copy] indications, both HCII and CIC knew that the other was receiving the confidential communications. Fourth, Mr. Hurney provided McNair, HCII and CIC with information and advice as to the progress of the Putnam County cases and strategy. Fifth, HCII and CIC shared responsibility for paying Mr. Hurney's fees. The undersigned does not have sufficient information to determine whether there were statements and promises made regarding joint and separate representation, and what the subjective beliefs of the participants were.

The Supreme Court of Appeals of West Virginia held in syllabus point 5 of Kirchner v. Smith, 58 S.E. 614 (W. Va. 1907), that:

> An attorney employed by two or more persons to give professional advice or assistance in a matter in which they are mutually interested can, on litigation subsequently arising between such persons or their representatives, be examined as a witness, at the instance of either, as to communications made when he was acting as attorney for all, although he could not disclose such communications in a controversy between his

clients, or either of them, and third persons.

Furthermore, Edna Selan Epstein, in <u>The Attorney-Client Privilege and the Work-Product Doctrine</u>, at 215 (4th ed. 2001), writes:

> When there is a falling out between parties who had a common legal interest, either party may obtain the file of a common attorney if they have need thereof. Thus, neither the attorney-client privilege nor the work-product doctrine apply [sic; applies] in such an instance to preclude discovery of the file and its contents by a party to the common interest, even if that party did not pay for the attorney's services. The attorney-client relationship is not dependent on who paid the legal fee.

In the 2004 Supplement to her book, Ms. Epstein wrote the following:

> On the other hand, where clients have a contractual relationship, attorney-client communications between one party and counsel representing a common privilege [sic? interest?] will not be privileged after a falling out. Thus, where an insurance or indemnification relationship exists, interests may converge when defending against the claim and then diverge when payment time comes. In such contexts, the subsequent adversity of interest has been held insufficient to negate the initial commonality of interest. Any privileged materials created while the commonality of interest obtained have been held to be discoverable by the parties to the common interest from each other. Privileged documents created after the adversity of interest became apparent, however, retain their privileged nature.

<u>Supplement</u>, at 45.

Based upon the foregoing authorities and review of the documents filed under seal, the Court finds that HCII and CIC had a common legal interest in the representation by Mr. McNair by Mr. Hurney during 2005, 2006, and 2007. It appears that HCII's and

CIC's respective interests may, or may not, have diverged in February, 2008. The subpoenas are not limited to a specific time period. The Court will now address some of the arguments raised in the various objections and motions which are pending, although the Court finds that it is not necessary to discuss the "at issue" exception to the attorney-client privilege.

The parties have presented arguments as to whether the failure to produce a privilege log, as required by Rule 45(d)(2)(A), Federal Rules of Civil Procedure, constituted a waiver of the attorney-client privilege or work-product protection. The Advisory Committee Notes for the 1991 amendment to Rule 45 provide as follows:

> A party receiving a discovery request who asserts a privilege or protection but fails to disclose that claim is at risk of waiving the privilege or protection. A person claiming a privilege or protection who fails to provide adequate information about the privilege or protection claim to the party seeking the information is subject to an order to show cause why the person should not be held in contempt under subdivision (e). Motions for such orders and responses to motions are subject to the sanctions provisions of Rules 7 and 11.

Mr. Hurney is a "person," not a "party;" thus waiver is not a consequence for his failure to prepare a privilege log.

Mr. Hurney's Objection to the Subpoena *duces tecum* (# 45)

The objection is **OVERRULED**. HCII, the insurance carrier who retained and paid Mr. Hurney to represent David McNair, is entitled to have access to the files relating to that representation. Pursuant to Rule 45(c)(1), Federal Rules of Civil Procedure, HCII

must take reasonable steps to avoid imposing undue burden or expense on Mr. Hurney. It appears that the least costly approach is for HCII to review the files in the 77 boxes and to pay reasonable copying costs for the documents it wishes or, in the alternative, to scan and electronically store those documents. Mr. Hurney's request that the Court direct HCII and CIC to pay past-due legal bills submitted by Jackson Kelly PLLC is **DENIED**. If Mr. Hurney has a fee dispute with any of his former clients he must take such action as he deems appropriate in another lawsuit.

Mr. Hurney's Motion to Quash and Objection to Deposition Subpoena (# 46)

The objection is **OVERRULED** and the Motion to Quash is **DENIED**. Mr. Hurney's request that the Court direct HCII and CIC to pay past-due legal bills submitted by Jackson Kelly PLLC is **DENIED**. As noted above, HCII should pay reasonable copying costs or scan and electronically store the documents. Mr. Hurney is entitled to the standard witness fee.

CIC's Motion to Quash Deposition Subpoena (# 49) and Motion to Quash Subpoena *duces tecum* (# 50)

In addition to asserting the attorney-client privilege and the work-product doctrine, which the Court has addressed above, CIC claims that it is entitled to the quasi attorney-client privilege, originally recognized in State ex rel. Allstate Ins. Co. v. Gaughan, 508 S.E.2d 75 (W. Va. 1998). The Gaughan decision holds

11

> that in a third-party bad faith action where an insured
> has signed a release of his/her claim file to a third-
> party litigant, an insurer may raise a quasi attorney-
> client privilege to communication in the insured's claim
> file.  The quasi attorney-client privilege belongs to the
> insurer, not the insured, and may be waived only by the
> insurer.

508 S.E.2d at 89.  This is not a third-party bad faith action; it is a declaratory judgment action between two insurance companies. The Court is unpersuaded by CIC's invocation of the quasi attorney-client privilege and finds that it is inapplicable.  The Motions to Quash are **DENIED**.

<u>HCI's Cross-Motion to Compel Deposition and Production (# 54)</u>

The cross-motion to compel is **GRANTED**, subject to the limitation set forth above with respect to the date when it became apparent that HCII's and CIC's interests were adverse to each other, and they were entitled to confidential communications with their respective counsel.

<u>HCI's Cross-Motion for Expenses, Including Attorney's Fees (# 54)</u>

Pursuant to Rule 37(a)(5)(A), Federal Rules of Civil Procedure, HCII may file an affidavit of its reasonable expenses incurred in making the cross-motion to compel, including attorney's fees.  CIC and Mr. Hurney shall file their responses to the affidavit within one week, including a statement identifying the attorney or the party whose conduct necessitated the motion.  If HCII wishes to seek its expenses, including attorney's fees, as to the motions to quash, then HCII must separately submit an affidavit

as to those motions, with a memorandum as to the Court's authority to award such expenses.   In such case, CIC's and Mr. Hurney's responses shall be filed within one week thereafter.

The Clerk is directed to transmit this Corrected Memorandum Opinion and Order to all counsel of record, including Messrs. Hurney and Crislip.

ENTER: August 6, 2010

Mary E. Stanley
United States Magistrate Judge